<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE SNACK JOINT LLC,<br><br>                   Plaintiff,<br><br>           v.<br><br>OCM GROUP USA, NJ, INC., OCM GLOBE INC., OCM GROUP USA INC., GANG WANG, YAOTIAN LI and XIAOHUI CHAI, "JOHN DOES" 1-5,<br><br>                   Defendants. | Case No. 2:21-cv-00818 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is: (1) a Motion to Dismiss filed by Defendants OCM Group USA, NJ, Inc. ("OCM NJ"), OCM Globe Inc. ("OCM Globe"), OCM Group USA Inc. ("OCM USA"), Gang Wang ("Wang"), Yaotian Li ("Li"), and Xiaohui Chai ("Chai") (collectively, "Defendants") seeking to dismiss Plaintiff The Snack Joint LLC's ("Snack") Complaint for lack of personal jurisdiction as to Li pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) Defendants' Motion to Dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); and (3) Defendants' Motion to Transfer Venue to the United States District Court for the Central District of California (the "Central District of California") pursuant to 28 U.S.C. § 1404(a). (ECF No. 33.) Snack opposed Defendants' motions. (ECF No. 34.) Defendants filed a reply in support of their motions. (ECF No. 35.) Also before this Court is Snack's Motion for Preliminary Injunction. (ECF No. 36.) Defendants opposed Snack's motion. (ECF No. 37.) Snack filed a reply in support of its motion. (ECF No. 38.) Having reviewed the submissions filed in connection with the motions and

having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss for improper venue is **DENIED**, Defendants' Motion to Transfer Venue is **GRANTED**, and Defendants' Motion to Dismiss for lack of personal jurisdiction and Snack's Motion for Preliminary Injunction are **DENIED as moot**.

## I.   BACKGROUND

Snack is in the food, beverage importation and wholesale business, selling beverages, condiments, and oil products across the U.S. (ECF No. 36-1 at 5.) One of Snack's products is a coconut juice product distributed under the trademark of YeShu federally registered in the U.S. (the "Asserted Mark"). (*Id.* at 5–6.) The Asserted Mark is owned by a Chinese company named Coconut Palm Group Limited ("Coconut Palm Group"). (*Id.* at 6.) Snack claims to have authorization from Coconut Palm Group to use the Asserted Mark exclusively and enforce it in the U.S. (*Id.*) Snack is incorporated and has its principal place of business in Brooklyn, New York. (ECF No. 1 ¶ 5.)

OCM Globe and OCM USA are in the food and beverage importation and distribution business. (ECF No. 33-1 at 5; ECF No. 37 at 7.) They imported from China and distributed in the U.S. certain coconut juice products (the "Accused Products"), which were manufactured by a Chinese company named Yeshu Group Co. Ltd. ("YeShu Group"). (ECF No. 37 at 7.) Defendants claim YeShu Group has authorized OCM Globe and OCM USA to sell and distribute the Accused Products in the U.S. (*Id.*) The Accused Products were sold under several trademarks that are owned by YeShu Group and officially registered in China (the "Accused Marks").[1]  (*Id.* at 8.) OCM Globe

---

[1] The Chinese characters for YeShu (*i.e.*, 椰树)—which appear on Snack's coconut juice products, the Accused Product, and the Accused Mark—mean coconut palm. (ECF No. 1-2 Ex. B; ECF No. 37 at 7–8.)

and OCM USA are based in City of Industry, California (near Los Angeles). (ECF No. 33-1 at 5.) Their related company OCM NJ is based in New Jersey.[2] (*Id.*; ECF No. 33-4 ¶ 2.) Wang, the chief executive officer of OCM Globe and OCM USA, is an individual residing in Orange County, California (near Los Angeles). (ECF No. 33-1 at 6.) Li, an employee of OCM USA, is an individual residing in Chino, California (near Los Angeles). (*Id.*) Chai, the chief executive officer of OCM NJ, is an individual residing in Los Angeles County, California. (*Id.* at 7.)

Snack argues the Accused Marks are identical or closely similar to the Asserted Mark. (ECF No. 36-1 at 6.) Snack alleges Defendants have no association with Snack or Coconut Palm Group, and have no authorization from Snack or Coconut Palm Group to use the Accused Marks in the U.S. (*Id.*) Snack contends Defendants have infringed upon Snack and Coconut Palm Group's trademark rights. (*Id.* at 7.) On January 15, 2021, Snack filed a Complaint in this Court against Defendants for importing and distributing the Accused Products in the U.S. under the Accused Marks, asserting claims for: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count 1); (2) unfair competition, false designation of origin and false description under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 2); (3) trademark infringement under New Jersey common law (Count 3); and (4) unfair competition under New Jersey common law (Count 4). (ECF No. 1.)

On June 1, 2021, Defendants filed: (1) a Motion to Dismiss for lack of personal jurisdiction as to Li pursuant to Federal Rule of Civil Procedure 12(b)(2); (2) a Motion to Dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); and (3) a Motion to Transfer Venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 33.) On June 2,

---

[2] Hereinafter, OCM Globe, OCM USA, and OCM NJ are collectively termed the "OCM Parties."

2021, Snack opposed Defendants' motions. (ECF No. 34.) On June 2, 2021, Defendants filed a reply in support of their motions. (ECF No. 35.) On June 14, 2021, Snack filed a Motion for Preliminary Injunction to enjoin Defendants' allegedly infringing activities. (ECF No. 36.) On June 15, 2021, Defendants opposed Snack's motion. (ECF No. 37.) On June 15, 2021, Snack filed a reply in support of its motion. (ECF No. 38.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss for Improper Venue

"Federal Civil Rule of Procedure 12(b)(3) permits a court to dismiss a matter that is filed in an improper venue." *Wilson v. JPMorgan Chase*, Civ. A. No. 18-13789, 2020 U.S. Dist. LEXIS 103695, at *3 (D.N.J. June 15, 2020). "[W]hen confronted with a motion to dismiss for improper venue, the [c]ourt may consider both the complaint and evidence outside the complaint." *Boston Sci. Corp. v. Cook Grp., Inc.*, 269 F. Supp. 3d 229, 234 (D. Del. 2017) (citing 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017)). "[T]he court accepts the allegations in the complaint as true unless they are contradicted by the defendant's affidavits." *Adams, Nash & Haskell, Inc. v. United States*, Civ. A. No. 19-3529, 2020 U.S. Dist. LEXIS 47471, at *3 (D.N.J. Mar. 19, 2020) (citing *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012)). The defendant "bear[s] the burden of showing improper venue." *Wilson*, 2020 U.S. Dist. LEXIS 103695, at *4 (quoting *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982)). The proper venue for a civil action is:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect

4

to such action.

28 U.S.C. § 1391(b). "A district court has broad discretion when it comes to deciding whether to transfer or dismiss a case for . . . improper venue." *Konica Minolta, Inc. v. ICR Co.*, Civ. A. No. 15-1446, 2015 U.S. Dist. LEXIS 171277, at *13 (D.N.J. Dec. 22, 2015) (citing *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)).

### B.   Motion to Transfer Venue

"A federal district court may transfer a civil action to a different venue under 28 U.S.C. § 1406(a) ('Section 1406') or 28 U.S.C. § 1404(a) ('Section 1404')." *Bonavito v. President & Fellows of Harvard Coll.*, Civ. A. No. 20-14657, 2021 U.S. Dist. LEXIS 123146, at *11–12 (D.N.J. June 30, 2021). "To determine which provision applies, the court first ascertains whether venue is proper in the original forum." *Adams*, 2020 U.S. Dist. LEXIS 47471, at *3 (citing *Lafferty v. St. Riel*, 495 F.3d 72, 78 (3d Cir. 2007)). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.*

Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). "[T]he burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879.

The Court must consider three factors when determining whether to grant a transfer under

§ 1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a)). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879–80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879). The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citing *Jumara*, 55 F.3d at 879–80).

## III. DECISION

### A. The District of New Jersey Is a Proper Venue

The parties agree § 1391(b)(2) governs the venue inquiry with respect to the District of New Jersey; that is, in which judicial district did a substantial part of the events or omissions giving rise to Snack's claims occur? (ECF No. 34 at 12; ECF No. 35 at 10.) Defendants argue the District of New Jersey is not a proper venue under § 1391(b)(2), because a substantial part of the events or

omissions giving rise to Snack's claims occurred in California's Los Angeles area, not New Jersey. (ECF No. 33-1 at 11.) Defendants present Wang's declaration that only about 4% of the U.S. sales of the Accused Products occurred in New Jersey, whereas about a half in California. (*Id*.) Defendants further indicate they all operated from the Los Angeles area: the management of the importation and distribution of the Accused Products was conducted in the Los Angeles area; the related documents and information pertaining to the Accused Products were maintained in the Los Angeles area; the communication with the OCM Parties' other U.S. locations was done from their Los Angeles area headquarters; and the importation of Accused Products was not handled by OCM NJ, but the Los Angeles area headquarters. (*Id*. at 12.) Defendants maintain, in cases involving trademark infringement, the events giving rise to the claim occur where the allegedly infringing sales occur, not where the injury is felt. (ECF No. 35 at 10.) Defendants state Snack provides no admissible evidence to show OCM NJ is the nerve center of Defendants' accused activities on the East Coast. (*Id*. at 12.)

Snack contends the District of New Jersey is a proper venue for its New Jersey common law claims, which are based on Defendants' accused activities conducted through OCM NJ within New Jersey. (ECF No. 34 at 13.) Snack maintains its Lanham Act claims also focus on Defendants' New Jersey activities, because Defendants use OCM NJ as a hub to distribute the Accused Products from California to the East Coast states, including but not limited to, New Jersey, New York, Connecticut, Massachusetts, Pennsylvania, and Florida. (*Id*. at 13–14.) Snack explains, because it is a New York company, the main events giving rise to its claims are related to Defendants' accused activities conducted through OCM NJ, not those committed by OCM Globe and OCM USA in California without the help of OCM NJ. (*Id*. at 14.) Snack also argues Wang's declaration that the sales of the Accused Products into New Jersey accounted for 4% of the overall U.S. sales

is misleading and immaterial, because the real question is how much of the sales were initiated by or conducted through OCM NJ, which is the main focus and nerve center of Defendants' accused activities. (*Id.*)

"Intellectual property infringement occurs, among other places, where any allegedly infringing articles are sold." *Master Cutlery, Inc. v. Panther Trading Co.*, Civ. A. No. 12-4493, 2012 U.S. Dist. LEXIS 178639, at *9–10 (D.N.J. Dec. 17, 2012). "In the context of trademark infringement cases, courts focus their venue inquiry on 'the location where the unauthorized passing off takes place—whether that occurs solely within one district or in many.'" *Vision Wine & Spirits, LLC v. Winery Exch., Inc.*, Civ. A. No. 12-6677, 2013 U.S. Dist. LEXIS 56942, at *10–11 (D.N.J. Apr. 22, 2013) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)). "As to claims of trademark infringement and unfair competition, the cause of action occurs where the passing off occurs." *Allied Old English, Inc. v. Uwajimaya, Inc.*, Civ. A. No. 11-1239, 2012 U.S. Dist. LEXIS 116261, at *15 (D.N.J. Aug. 16, 2012) (quoting *Elite Sports Enters., Inc. v. Lococo*, Civ. A. No. 07-4947, 2008 U.S. Dist. LEXIS 67472, at *13 (D.N.J. Sept. 5, 2008)) (internal quotation marks omitted); *see also Ceramica Falcinelli, S.p.A. v. Am. Marazzi Tile, Inc.*, Civ. A. No. 99-1223, 1999 U.S. Dist. LEXIS 15526, at *12 (D.N.J. Sept. 29, 1999) ("In cases of trademark infringement and unfair competition, the wrong takes place where the 'passing off' occurs." (citations omitted)). "Passing off occurs where the deceived customer buys defendant's product in the belief that he is buying plaintiff's [product]." *Vision Wine*, 2013 U.S. Dist. LEXIS 56942, at *11 (quoting *Taylor & Francis Grp., PLC v. McCue*, 145 F. Supp. 2d 627, 630 (E.D. Pa. 2001)); *see also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, Civ. A. No. 15-5477, 2017 U.S. Dist. LEXIS 12246, at *10 (D.N.J. Jan. 30, 2017) ("Trademark infringement claims are deemed to arise where the 'passing off' occurs, or where the allegedly infringing

products are sold to consumers who may become confused." (citing *Cottman*, 36 F.3d at 294)).[3]

Here, as to customer confusion, Snack contends: (1) Defendants intended to "confuse consumers in order to profit from the goodwill associated with [the Asserted Marks];" (2) "Defendants' use of the Accused Mark in connection with the [Accused Products] have caused and will continue to cause consumers' confusion between the [Asserted Mark] and the Accused Mark;" and (3) "consumers would be confused by Defendants' use of the Accused Mark and would believe Defendants to be associated with [Snack or the Asserted Mark]." (ECF No. 38 at 13–14.) In other words, the passing off, if any, occurred when an Accused Product was sold to a consumer, who may be confused as to the origin or other characters of the Accused Product. In this regard, Defendants present Wang's declaration that the sales of the Accused Products into New Jersey constituted about 4% of the overall sales in the U.S. from August 2019 to April 2021, while those for California took up about 50%. (ECF No. 33-2 ¶ 9.) Therefore, Defendants have presented evidence that suggests a substantial portion of the alleged passing off, *i.e.*, events giving rise to Snack's claims, occurred in California.

Snack's refuting of Defendants' position is unavailing. First, Snack's focus on OCM NJ as an alleged distribution hub of the Accused Products is of no moment. How the Accused Products are distributed says nothing about the place of potential passing off, which does not occur in a product's distribution process before it is sold. Second, the Court rejects Snack's argument on Wang's declaration regarding the U.S. sales of the Accused Products. Snack argues Wang's

---

[3] In addition to trademark infringement and unfair competition, Snack alleges under Count 2 that Defendants made false designation of origin and false description regarding the Accused Products by using the Accused Marks, thereby misrepresenting the Accused Products' association with Snack or Coconut Palm Group, so that consumers were confused as to the source of the Accused Products. (ECF No. 1 ¶ 54.) In other words, Snack's allegations of false designation of origin and false description are also directed to the potential passing off with the Accused Products. Such false designation of origin and false description also occur when passing off occurs.

declaration, when referring to "the sales into New Jersey," fails to clarify whether it means the Accused Products were sold to New Jersey customers or, alternatively, the Accused Products were sent from California to New Jersey. (ECF No. 34 at 14.) The Court disagrees. Wang's declaration unambiguously refers to the percentage of the U.S. sales of the Accused Products that were made to New Jersey customers. After all, Wang's declaration never mentions the distribution process of the Accused Products in the U.S. or admits OCM NJ is a distribution hub. As a result, there is no context to alternatively interpret the plain language—"the sales into New Jersey"—as referring to the distribution of the Accused Products into New Jersey before they could be sold elsewhere. Even if this alternative interpretation is correct, it would only suggest less than 4% of the Accused Products were sold to New Jersey customers, which could only weaken Snack's position that a substantial portion of the events giving rise to its claims occurred in New Jersey. Third, the Court need not entertain Snack's argument that its New Jersey common law claims focus on Defendants' accused activities in New Jersey. In the Complaint, Snack "realleges and incorporates by reference all prior allegations as though fully set forth herein" for its two common law claims under Counts 3 and 4, without presenting any factual allegations specific to the two claims. (ECF No. 1 ¶¶ 57– 60.) In other words, Snack's common law claims arose out of the same operative facts with those for its Lanham Act claims under Counts 1 and 2. Therefore, under the doctrine of pendent venue,[4]

---

[4] "Although venue must generally be established for each cause of action asserted in the complaint, there is an exception 'where claims arise out of the same operative facts.'" *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, Civ. A. No. 16-3103, 2017 U.S. Dist. LEXIS 25255, at *20–21 (E.D. Pa. Feb. 23, 2017) (quoting *Phila. Musical Soc., Loc. 77 v. Am. Fed'n of Musicians of U.S. & Canada*, 812 F. Supp. 509, 517 n.3 (E.D. Pa. 1992)). "This doctrine, known as pendent venue, allows venue to be sustained over a federal claim even if venue over pendent state law claims would not be proper." *Id.* at *21 (citing *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005)); *see also CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 649 (D.N.J. 2004) ("[W]hen venue is proper on federal claims, it is also proper on pendent state claims." (citing *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 529 (8th Cir. 1973))). "The doctrine of pendent venue borrows largely from the principles of supplemental

any court with proper venue over Snack's federal Lanham Act claims may exercise pendent venue over its common law claims.

Nevertheless, the Court finds the District of New Jersey is a proper venue here. In *Tefal*,[5] the court found New Jersey to be a proper venue in a trademark infringement case, based on a reasonable inference that the defendants, who were California entities, had "sold substantial dollar amounts of the allegedly infringing products in New Jersey," when "New Jersey sales by [the defendants] under the contested trademark accounted for about 5 per cent of [the defendants'] total national sales." 529 F.2d at 496. Even though the *Tefal* defendants "emphasize[d] that a far greater percentage of [their] business in the relevant articles was conducted in California than in New Jersey during the pertinent period," the court found "it not unreasonable to infer that [the defendants] sold substantial dollar amounts of the allegedly infringing products in New Jersey." *Id*. The *Tefal* court explained this was because, "[w]hile the value of sales of the critical products in New Jersey and California [wa]s given by defendants in relative terms as a percentage of national sales, there [wa]s no evidence of the actual dollar value of the sales in each state." *Id*. The factual situation here is analogous to *Tefal*: Defendants, mostly California companies and individuals, admit 4% of the total U.S. sales of the Accused Products occurred in New Jersey, without providing the actual dollar amounts of the sales in any state. As a result, the Court finds it

---

jurisdiction." *High River*, 353 F. Supp. 2d at 493 (citations omitted). Because all of Snack's claims arose out of the same operative facts, the pendent venue doctrine is triggered.

[5] "Although *Tefal* was decided under an earlier version of 28 U.S.C. § 1391(b)(2) which provided that venue was proper in 'the judicial district . . . in which the claim arose,' instead of the current version, which analyzes where 'a substantial part of the events . . . occurred,' the *Tefal* court analyzed where the claim arose by determining whether the defendant did 'substantial business in products which allegedly infringe plaintiff's products' in that district." *Spectathlete P'ship v. Rhubarb Sports*, Civ. A. No. 93-4294, 1993 U.S. Dist. LEXIS 19191, at *7 n.3 (E.D. Pa. Dec. 14, 1993) (quoting *Tefal*, 529 F.2d at 497). Therefore, *Tefal* "remains valid precedent even after the 1990 amendments to the statute." *Id*.

reasonable to infer a substantial dollar amount of the Accused Products was sold in New Jersey, which allegedly led to passing off and gave rise to Snack's claims. Therefore, the District of New Jersey is a proper venue.

Even if the sales of the Accused Products in California were greater than those in New Jersey, it does not automatically make this District an improper venue. *See Ezaki*, 2017 U.S. Dist. LEXIS 12246, at *11 ("[The defendant] certainly does not state that [its allegedly infringing] sales in New Jersey are *de minimis*—just that more product is sold in California. Because sales of [the defendant's] allegedly infringing product are admittedly made in New Jersey, the trademark claims, in part, arose here as well as in California." (citations omitted)). The District of New Jersey will be a proper venue as long as "a substantial part of the events or omissions giving rise to the claim" occurred in New Jersey. 28 U.S.C. § 1391(b)(2). "The statute does not require that a majority of the events take place in the chosen venue." *Omega Fin. Servs. v. Innovia Estates & Mortg. Corp.*, Civ. A. No. 07-1470, 2007 U.S. Dist. LEXIS 90125, at *10 (D.N.J. Dec. 6, 2007) (citing *Park Inn Int'l*, 105 F. Supp. 2d at 376); *see also Lannett Co., Inc. v. Asherman*, Civ. A. No. 13-2006, 2014 U.S. Dist. LEXIS 23501, at *12 (E.D. Pa. Feb. 24, 2014) ("Section 1391(b) does not require this [c]ourt to determine the 'best' forum, or 'the forum with the most substantial events.'" (citations omitted)). "[I]f the infringement occurred in other districts as well, then venue could be proper in more than one district." *Cottman*, 36 F.3d at 294 (citing *Tefal*, 529 F.2d at 497); *see also Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999) ("[M]ore than one federal district may be the site of substantial events or omissions and therefore more than one federal district may be a proper venue in a given case." (citations omitted)).

Accordingly, Defendants' Motion to Dismiss for improper venue is **DENIED**. Because the District of New Jersey is a proper venue, Defendants may request transfer under § 1404(a).

**B.      The Court Will Transfer this Action to the Central District of California**

**1.      The Central District of California Is a Proper Transferee Venue**

Defendants maintain the Central District of California is a proper transferee venue, where all Defendants are subject to personal jurisdiction: OCM Globe, OCM USA, Wang, Li, and Chai all reside in the Central District of California, and OCM NJ consents to personal jurisdiction and venue there. (ECF No. 33-1 at 13.) Defendants argue, even without OCM NJ's consent, California may exercise personal jurisdiction and venue over OCM NJ, which has purposefully directed its activities there by maintaining operations in the Los Angeles area, where a substantial part of the events giving rise to Snack's claims occurred. (ECF No. 35 at 13.) Snack insists the Central District of California is not a proper venue, because OCM NJ is a New Jersey company and its consent is irrelevant. (ECF No. 34 at 17.) The Court disagrees.

OCM Globe, OCM USA, Li, Wang, and Chai all reside in California. To determine whether this action could have been brought in the Central District of California pursuant to § 1391(b)(1), the only venue question is whether OCM NJ also resides in California.[6] In the venue analysis, "an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because "personal jurisdiction is waivable, and based on Defendants' motion . . . to transfer this action, . . . . it is apparent that [OCM NJ] consents to the exercise of personal jurisdiction over [it] in" the Central District of California. *Real Estate Sols. Today LLC v. Scifo*, Civ. A. No. 20-4512, 2021 U.S. Dist. LEXIS 25328, at *20 n.6 (D.N.J. Feb. 10, 2021). Therefore, OCM NJ's consent makes it subject

---

[6] OCM may reside in both New Jersey and California, because "a corporation may 'reside' in more than one state." *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 87 (3d Cir. 2011) (citing 28 U.S.C. § 1404(a)).

to personal jurisdiction in the Central District of California, where it is deemed to reside for venue purposes. Consequently, the Central District of California is a proper venue for OCM NJ under § 1391(b)(1). *See Toll Glob. Forwarding Scs United States v. Curtis Int'l*, Civ. A. No. 20-5753, 2021 U.S. Dist. LEXIS 86410, at *4 (D.N.J. Jan. 5, 2021) ("Defendant . . . consented to this [c]ourt's jurisdiction. Venue in New Jersey is thus proper under 28 U.S.C. § 1391(b)(1)." (citations omitted)); *see also Hamm v. Wyndham Resort Dev. Corp.*, Civ. A. No. 19-426, 2020 U.S. Dist. LEXIS 188027, at *18 (M.D. Tenn. Oct. 9, 2020) ("Section 1391(c)(2) means that [the defendant], by failing to object to personal jurisdiction and thus consenting to this court's exercise of personal jurisdiction, is deemed to 'reside' in this district for purposes of § 1391(b)(1). As a result, venue in this district is proper under the statute."); *Discovery Pier Land Holdings, LLC v. Visioneering Envision.Design.Build, Inc.*, Civ. A. No. 14-2073, 2015 U.S. Dist. LEXIS 43497, at *3 (E.D. Mo. Apr. 2, 2015) ("[T]he action could have been brought in the Central District of California, because the parties consented to jurisdiction there and venue is proper there." (citing 28 U.S.C. § 1391(b)(1))).

Accordingly, the Central District of California is a proper transferee venue. The next question is whether the private and public interest factors as set forth in *Jumara* favor transfer.

### 2. Private Interest Factors Favor Transfer

#### a. Plaintiff's Forum Preference

Defendants maintain New Jersey is a foreign forum to Snack, whose choice of forum is therefore entitled to less deference. (ECF No. 33-1 at 15.) Snack counters it is not a foreign company here, because it is in the same NY-NJ-PA metropolitan area with this Court and OCM NJ, which is a New Jersey company it competes with. (ECF No. 34 at 17.) Snack explains it filed the action in this District because: (1) most of its business is generated from the NY-NJ-PA

metropolitan area; and (2) its claims mainly arose from Defendants' sales of the Accused Products on the East Coast conducted through OCM NJ. (*Id*.) The Court disagrees.

"In the Third Circuit, a plaintiff's choice of forum is a 'paramount concern' in deciding a motion to transfer venue." *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 289 (D.N.J. 1997). "The choice is 'entitled to greater deference' when a plaintiff chooses its home forum." *Id*. (citations omitted). In contrast, "a plaintiff's choice of forum is afforded less deference . . . when the plaintiff has chosen a foreign forum." *Id*. at 290 (citations omitted); *see also Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998) ("One situation where deference [to the plaintiff's forum preference] is curbed is where the plaintiff has not chosen his or her home forum." (citations omitted)). "[T]he issue of how much deference should be afforded a foreign plaintiff in her choice of forum is simply a matter of convenience." *Nieminen v. Breeze-Eastern, Div. of Transtechnology Corp.*, 736 F. Supp. 580, 583–84 (D.N.J. 1990). "In other words, if the plaintiff demonstrates that her choice of a foreign forum as based on convenience, the reluctance to grant full deference to plaintiff's choice may be overcome." *Id*. at 584 (citing *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989)); *see also Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008) ("Foreign plaintiffs . . . may bolster the amount of deference due their choice by making a strong showing of convenience." (citing *Lony*, 886 F.2d at 634)).

Snack, which is incorporated and has its principal place of business in New York, is a foreign company here. Snack cites no legal authority supporting its argument that a company, which is based outside New Jersey, is not a foreign company in this District due to its geographical proximity with New Jersey. Snack's argument is therefore not entitled to the Court's consideration. *See Hilburn v. State Dep't of Corr.*, Civ. A. No. 07-6064, 2012 U.S. Dist. LEXIS 106536, at \*91 (D.N.J. July 31, 2012) ("The absence of authority is fatal to [d]efendant's argument."). As a result,

Snack's forum preference is entitled to less deference.

In addition, Snack fails to show its choice of filing this action in New Jersey, as opposed to New York, was based on convenience considerations. First, even though Snack operates in the same NY-NJ-PA metropolitan area with this Court and OCM NJ, it does not suggest New Jersey is a more convenient forum than New York. After all, Snack resides in New York and is not shown to have more competition or business in New Jersey than New York. Second, as explained in Part III.A, *supra*, Snack's claims did not arise from OCM NJ's alleged role as a distribution hub for the Accused Products on the East Coast, which should not represent a significant convenience consideration for Snack. Instead, Snack's claims arose from the alleged passing off when the Accused Products were sold across the U.S., a major portion of which occurred in California. Third, even if Snack intends to obtain evidence from OCM NJ, Snack does not show it would be inconvenient to do so if this action is filed in its home forum in New York.

Accordingly, the first factor only slightly disfavors transfer.

### b.      Defendant's Forum Preference

The factor for the defendant's preference favors transfer, because Defendants seek to transfer this case to the Central District of California. Here, this factor should be given more weight, because less deference is afforded to Snack's choice of forum. *Virag, S.R.L. v. Sony Comput. Entm't Am. LLC*, Civ. A. No. 14-4786, 2015 U.S. Dist. LEXIS 39910, at *16 (D.N.J. Mar. 30, 2015) ("[B]ecause less deference is afforded to [p]laintiff's choice of forum, [d]efendant's choice of forum should be given more weight." (quoting *N. Am. Dental Wholesalers, Inc. v. Danaher Corp.*, Civ. A. No. 11-247, 2011 U.S. Dist. LEXIS 91140, at *12 (E.D. Pa. Aug. 15, 2011))).

### c.      Whether the Claim Arose Elsewhere

Snack maintains its New Jersey common law claims arose from New Jersey, because they focus on Defendants' accused activities within this District and conducted through OCM NJ. (ECF No. 34 at 18.) Snack asserts its Lanham Act claims also primarily arose from New Jersey, because: (1) Defendants used OCM NJ as an infringement focal point to distribute the Accused Products on the East Coast; and (2) Snack's main concern is Defendants' accused activities conducted through OCM NJ, as its sales on the East Coast account for more than 80% of its total sales. (*Id.*) Defendants contend California is the locus of their accused activities, because: (1) the Accused Products were manufactured in China and imported to California, and then distributed throughout the U.S. from California; (2) only a fraction of products distributed throughout the U.S. ended up in New Jersey, whereas about a half in California; and (3) the sales and distribution decisions regarding the Accused Products were made in California. (ECF No. 33-1 at 17–18.) The Court agrees.

"The third factor, where the claims arose, is the most critical to the Court's analysis." *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. A. Nos. 03-1882, 03-2784, 2012 U.S. Dist. LEXIS 137119, at *16 (D.N.J. Sept. 25, 2012). Its inquiry "involves a consideration of which forum constitutes the center of gravity of the dispute, its events, and transactions." *Rosen v. Lieberman*, Civ. A. No. 16-7341, 2018 U.S. Dist. LEXIS 181005, at *12 (D.N.J. Oct. 18, 2018) (citations and internal quotation marks omitted). The third factor "weighs in favor of transfer to the [forum] where the majority part of events and omissions from which [p]laintiff's claims arise, took place." *Hassett v. Beam Suntory, Inc.*, Civ. A. No. 19-8364, 2019 U.S. Dist. LEXIS 217406, at *11 (D.N.J. Dec. 18, 2019); *see also In re Amkor Tech., Inc. Sec. Litig.*, Civ. A. No. 06-298, 2006 U.S. Dist. LEXIS 93931, at *15 (E.D. Pa. Dec. 28, 2006) ("Typically the most appropriate venue is where a majority of events giving rise to the claim arose." (citing *Siegel v. Homestore, Inc.*, 255 F. Supp.

2d 451, 456 (E.D. Pa. 2003))). "[U]nder § 1404(a), courts must select 'the most appropriate venue,' which 'is where a majority of events giving rise to the claim arose' and where the 'center of gravity' is." *Tang v. Eastman Kodak Co.*, Civ. A. No. 20-10462, 2021 U.S. Dist. LEXIS 100395, at *17 n.8 (D.N.J. May 27, 2021) (citations omitted).

As discussed in Part III.A, *supra*, the events giving rise to Snack's claims are the passing off that may have occurred when the Accused Products were sold. Because nearly half of the U.S. sales of the Accused Products occurred in California, while only 4% occurred in New Jersey, the majority (or close to majority) of the events giving rise to Snack's claims arose from California. Transfer is therefore favored. *C.f. Ezaki*, 2017 U.S. Dist. LEXIS 12246, at *11–13 (finding that the third factor was neutral in a trademark infringement case where the defendant sought to transfer the case from New Jersey to California, in part because the defendant only stated it "s[old] hundreds of thousands more [allegedly infringing] products in California than in New Jersey" and "provide[d] no overall sales figures that might put [the defendant's] statement into context").

Moreover, the parties' locations suggest transfer is favored. The only party that is based in New Jersey is OCM NJ, whose alleged role as a distribution hub does not indicate where Snack's claims arose. All the other Defendants are based in California, and Snack is based in New York. Therefore, even if New Jersey has any meaningful connection to this action other than being one of many states in which the alleged infringement occurs, such a connection is much weaker than that for California. *C.f. Ezaki*, 2017 U.S. Dist. LEXIS 12246, at *12 (finding that the third factor was neutral, though both parties' "headquarters [we]re located" in the proposed transferee forum of California, because "both parties also ha[d] significant connections to" New Jersey, where the plaintiff "maintain[ed] an office and employees" and where the defendant "[wa]s incorporated . . . and ha[d] at least one employee," so that the case "d[id] not present a situation in which the forum

18

state ha[d] no meaningful connection to the litigation other than being one of many states in which the alleged infringement occur[red]" (citations omitted)).

Finally, the Court need not entertain Snack's argument that its New Jersey common law claims focus on Defendants' accused activities in New Jersey. As discussed in Part III.A, *supra*, Snack's claims all arise from the operative facts. As a result, no separate transfer analysis for Snack's common law claims is needed. *See Cigna Corp. v. Celgene Corp.*, Civ. A. No. 21-90, 2021 U.S. Dist. LEXIS 97590, at *14–15 (E.D. Pa. May 24, 2021) (finding that the court's "analysis of the public and private *Jumara* factors for the federal antitrust claims [wa]s also applicable for the state claims and weigh[ed] in favor of transfer," when "all the federal antitrust law claims against [defendants] [we]re properly venued in both [transferor and transferee districts], and the remaining state law claims . . . all ar[o]se out of the same operative facts"); *McKinney v. Pinter*, Civ. A. No. 18-4185, 2019 U.S. Dist. LEXIS 30715, at *11, 15 (E.D. Pa. Feb. 26, 2019) (finding that "the third private interest factor[] strongly favor[ed] transfer because the claims arose primarily in Alabama," when the plaintiff asserted a federal law claim and several "appended [Pennsylvania] state law claims" that "ar[o]se out of the same operative facts," without considering whether the events giving rise to the plaintiff's state law claims primarily occurred in Pennsylvania).

Accordingly, the third factor favors transfer.

### d.   Convenience of the Parties

Defendants state it would be inconvenient for them to keep the case in this District, because all Defendants except OCM NJ reside in California. (ECF No. 33-1 at 15–18.) Snack counters it is equally inconvenient, if not more inconvenient, for Snack to litigate this case in California, where Snack has little business with the coconut juice products and no witness or documents on

19

its side. (ECF No. 34 at 18.) Snack suggests New Jersey is not a rather inconvenient forum for

Defendants, who voluntarily choose to do business in New Jersey by setting up OCM NJ as a

distribution hub. (*Id.*)

The fourth factor requires the court to examine "the convenience of the parties as indicated

by their relative physical and financial condition." *Partners of Mass., LLC v. Fantasia*, Civ. A.

No. 15-7960, 2016 U.S. Dist. LEXIS 179898, at *22 (D.N.J. Dec. 28, 2016) (citing *Jumara*, 55

F.3d at 879); *see also Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, Civ. A. No. 08-2158, 2008

U.S. Dist. LEXIS 87645, at *22 (D.N.J. Oct. 29, 2008) (finding that "convenience of the parties

d[id] not strongly favor transfer to a California forum," when "defendants ha[d] not shown any

physical or financial limitations to their ability to litigate the action in New Jersey" (citations

omitted)).

> While courts in this District have found that a large financial
> disparity between parties will sometimes sway this factor either in
> favor of transfer or against it, that typically occurs in scenarios
> where one party is a large company or conglomerate, the other is an
> individual or a small business, and the financial disparity is extreme.

*Hytera Communs. Corp. v. Motorola Sols., Inc.*, Civ. A. No. 17-12445, 2018 U.S. Dist. LEXIS

207162, at *25–26 (D.N.J. Dec. 6, 2018) (citing *Goldstein v. MGM Grand Hotel & Casino*, Civ.

A. No. 15-4173, 2015 WL 9918414, at *3 (D.N.J. Nov. 5, 2015)). "If the transfer would merely

switch the inconvenience from the defendant to plaintiff, the transfer should not be allowed." *NPR,

Inc. v. Am. Int'l Ins. Co.*, Civ. A. No. 00-242, 2001 U.S. Dist. LEXIS 3463, at *14–15 (D.N.J. Mar.

28, 2001) (citations omitted).

Here, all Defendants except OCM NJ are based in California. For them, traveling to New

Jersey to litigate is just as inconvenient as requiring Snack, a New York company, to litigate in

California. Also, neither party points to any physical or financial difficulties that may limit its

ability to sue in a distant forum. Instead, the parties both represent companies that conduct businesses across the U.S. This is not a case between an individual and a large company where the financial disparity is evident. Accordingly, the fourth factor is neutral.

### e.      Convenience of the Witnesses

Defendants assert the management of all the OCM Parties is done from the Los Angeles area headquarters. (ECF No. 33-1 at 16.) Defendants indicate the witnesses with knowledge about Defendants' accused activities, if further identified, are likely to be in the Los Angeles area and can be compelled to attend trials in the Central District of California. (*Id*. at 16, 19.) In particular, Defendants state Li, who handles the communication with the Chinese supplier of the Accused Products and could provide relevant evidence, resides in the Los Angeles area, where Li would be available to attend trials. (*Id*.) Snack maintains OCM NJ must have employees in New Jersey, and these employees can testify in this District about OCM NJ's allegedly infringing activities. (ECF No. 34 at 19.)

The fifth factor must be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Danka*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879). Here, neither party has identified any witness that would actually be unavailable for trials in either forum.

First, it is irrelevant that Defendants identify Li as a witness that may be out of this Court's subpoena power. Li is a party here and therefore should not be considered for the fifth factor analysis, whose "focus should be on non-party witnesses and their relative importance." *Navetta v. KIS Career Sch., Inc.*, Civ. A. No. 14-5724, 2016 U.S. Dist. LEXIS 59113, at *11 (E.D. Pa. May 4, 2016) (citations omitted); *see also Morrison v. Lindsey Lawn & Garden, Inc.*, Civ. A. No. 13-1467, 2014 U.S. Dist. LEXIS 27150, at *13 (E.D. Pa. Mar. 4, 2014) ("The burden is on the

defendant to identify specific nonparty witnesses who may be unavailable for trial, and to demonstrate why those witnesses would find it more convenient to testify in another forum." (citations omitted)); *Tessera, Inc. v. Sony Elecs. Inc.*, Civ. A. No. 10-838, 2012 U.S. Dist. LEXIS 46324, at *23 n.7 (D. Del. Mar. 30, 2012) ("[T]he only relevant witnesses for this [fifth factor] analysis are non-party witnesses outside the [c]ourt's subpoena power.").

Second, the Court should not consider the convenience of Li, an employee of OCM USA, and the employees of OCM NJ (if any) that Snack intends to call. After all, "the convenience of witnesses [who] are employees of a party carries no weight because the parties are obligated to procure their attendance at trial." *Liggett*, 102 F. Supp. 2d at 534 n.19 (quoting *Mentor Graphics Corp. v. Quickturn Design Sys.*, 77 F. Supp. 2d 505, 510 (D. Del. 1999)). "In any event, these employee witnesses are already taken into account in an analysis of the 'convenience of the parties' private interest *Jumara* factor." *Papst Licensing GmbH & CO. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 442 n.6 (D. Del. 2015).

Third, the parties do not provide any specific information on the identity and the potential testimonies of the non-party witnesses that they intend to call. This is insufficient to argue for or against transfer under the fifth factor. *See Szabo v. CSX Transp., Inc.*, Civ. A. No. 05-4390, 2006 U.S. Dist. LEXIS 3862, at *5 (E.D. Pa. Feb. 1, 2006) ("When arguing for transfer on the basis of witness availability at trial and witness convenience, movant has the responsibility to specify clearly the key witnesses to be called." (quoting *Coble v. Conrail*, Civ. A. No. 92-2386, 1992 U.S. Dist. LEXIS 12761, at *5–6 (E.D. Pa. Aug. 24, 1992))); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 205 (D. Del. 1998) ("Given the complete lack of specificity with which these witnesses were identified and the absence of 'adequate information with respect to the content and materiality' of their testimony, the [c]ourt has no other choice but to discount them in its weighing

22

test [for the fifth factor]." (citations omitted)); *Lucent Techs. v. Aspect Telcoms. Corp.*, Civ. A. No. 97-1618, 1997 U.S. Dist. LEXIS 12811, at *18 (E.D. Pa. Aug. 20, 1997) (finding that the fifth factor was neutral, because the defendant "fail[ed] to meet its heightened burden under § 1404 by not identifying with particularity the unavailability and materiality of specific witnesses," and the plaintiff's "assertions concerning the relevance of [its] witnesses fail[ed] in the same respects as [the defendant's]").

Because "neither party is able to identify any witness who would be unavailable for trial in either district, the court must find that this factor is neutral." *Navetta*, 2016 U.S. Dist. LEXIS 59113, at *11; *see also Dynamic Data Techs., LLC v. Amlogic Holdings, Ltd.*, Civ. A. No. 19-1239, 2020 U.S. Dist. LEXIS 68756, at *7 (D. Del. Apr. 20, 2020) ("Because no record evidence demonstrates that necessary witnesses will refuse to appear in [the transferor forum] for trial without a subpoena, the convenience of the witnesses factor is neutral."); *Morrison*, 2014 U.S. Dist. LEXIS 27150, at *14 ("Because neither party has identified any nonparty witnesses who would be unavailable for trial in either forum, this factor does not weigh in favor of transfer.").

### f.    Locations of Relevant Books and Records

Defendants argue the records related to the importation of the Accused Products from China to the U.S. and Defendants' first sale doctrine defense are in the Central District of California, where OCM Globe and OCM USA are headquartered. (ECF No. 33-1 at 16, 19.) Snack counters the relevant records can be easily moved electronically to different venues, and Defendants fail to give any reason why these records cannot be produced in New Jersey. (ECF No. 34 at 19.) The Court agrees.

The sixth factor is only relevant "to the extent that the files could not be produced in the alternative forum." *Danka*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879). "[W]hen

documents can be transported and/or easily photocopied, their location is entitled to little weight." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 608 (D.N.J. 2010) (quoting *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003)). "[T]he technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Fantasia*, 2016 U.S. Dist. LEXIS 179898, at *24 (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)). Here, neither party has "indicated that relevant books and records will not be available in New Jersey," *id*. at *23 (finding the sixth factor neutral), or "suggested that the transportation, if necessary, of the relevant documents to either forum would be unduly burdensome or expensive." *Uwajimaya*, 2012 U.S. Dist. LEXIS 116261, at *19 (finding the sixth factor neutral). Therefore, this factor is neutral.

Accordingly, among the six private interest factors, the first factor slightly disfavors transfer, the second and the third factors favor transfer, and the other three factors are neutral. As a result, the private interest factors weigh in favor of transfer.

### 3.   Public Interest Factors Favor Transfer

#### a.   Enforceability of the Judgment

Snack maintains the enforceability of the judgment factor is neutral, because the judgment rendered here in one forum would be enforceable in the other. (ECF No. 34 at 19.) The Court does not discern, and Defendants do not provide, any reason why a judgment of this case may be unenforceable in New Jersey or California. This factor is therefore neutral.

#### b.   Practical Considerations

Snack contends the practical considerations regarding coordinating schedule and traveling arrangements for the witnesses weigh against transfer, because many non-party witnesses are located in the NY-NJ metropolitan area. (ECF No. 34 at 20.) The Court disagrees.

"[P]otential delays caused by witnesses needing to travel may be considered" for the practice consideration inquiry. *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, Civ. A. No. 18-3475, 2018 U.S. Dist. LEXIS 199168, at *14 (D.N.J. Nov. 26, 2018). "[T]he likelihood that parties, documents, and witnesses will have to be transported from one forum to another regardless of where this case is litigated means that 'practical considerations that could make the trial easy, expeditious, or inexpensive' do not favor either forum." *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008) (citing *Jumara*, 55 F.3d at 879); *see also Gourmet*, 2008 U.S. Dist. LEXIS 87645, at *24 ("Practical considerations . . . do not favor either forum because both parties have witnesses and records located in their home states."). Here, the parties, the potential witnesses, and the relevant documents are located in New Jersey, New York, and California. There is a likelihood that the parties, witnesses, and documents will need to be transferred from one forum to another regardless of where this case is litigated. Therefore, this factor is neutral.

### c.   Court Congestion and Administrative Difficulty

Neither party has addressed this factor. However, "[r]egarding the administrative difficulties associated with proceeding in either District, the Court is required to evaluate this factor in light of the relative docket congestion of the fora." *Hytera Communs. Corp. v. Motorola Sols., Inc.*, Civ. A. No. 17-12445, 2018 U.S. Dist. LEXIS 207162, at *33 (D.N.J. Dec. 6, 2018). The most recent federal court management statistics shows the civil cases in the District New Jersey have a longer median time (10.1 months) from filing to disposition than those in the Central District of California (4.8 months).[7] This suggests the District of New Jersey is experiencing a higher level of court congestion, which favors transfer.

---

[7] National Judicial Caseload Profile, United States Courts, (Mar. 2021), *available at*: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf.

On the other hand, transfer is favored when the transferee court experiences a lower level of judicial emergency. *See Mehta v. Angell Energy*, Civ. A. No. 18-2319, 2019 U.S. Dist. LEXIS 171612, at *23–24 (D.N.J. Sept. 30, 2019) (finding that the analysis of "the relative administrative difficulty weigh[ed] heavily in favor of transfer," because "the District of New Jersey [wa]s . . . experiencing a judicial emergency and lack[ed] six District Judges," while "[t]he District of Minnesota, on the other hand, ha[d] a full complement of District Judges"). The most recent federal court management statistics shows: the District of New Jersey lacks four District Judges, and nominations have been made for two of the four vacancies; the Central District of California lacks six District Judges, and no nomination has been made for any vacancy.[8] Therefore, the Central District of California is experiencing a greater level of judicial emergency, which disfavors transfer.

On balance, the third factor is neutral.

### d.      Local Interest in Deciding Local Controversies

Defendants argue, because the locus of their accused conducts is in California, it is in the local interest of the California public, not the New Jersey public, to have such matters decided in California. (ECF No. 33-1 at 19–20.) Snack maintains the District of New Jersey has an interest in deciding this case, which involves a New Jersey company OCM NJ used as a focal point for the alleged trademark infringement activities. (ECF No. 34 at 20.) The Court disagrees.

As discussed in Parts III.A and Part III.B.2.c, *supra*, a much greater proportion of the events giving rise to Snack's claims occurred in California than New Jersey. Therefore, California has a stronger local interest in adjudicating this case. *See DGVault, LLC v. Dunne*, Civ. A. No. 18-14152,

---

[8] Current Judicial Vacancies, United States Courts, (Aug. 3, 2021), *available at* https://www.uscourts.gov/judges-judicial-vacancies/current-judicial-vacancies.

2020 U.S. Dist. LEXIS 1320, at *18 (D.N.J. Jan. 6, 2020) ("[T]he majority of the events and omissions giving rise to the claims at issue occurred in Florida, not New Jersey. Accordingly, Florida has a stronger local interest than New Jersey in adjudicating this matter." (citing *Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 576 (D.N.J. 2000))); *Jackson v. Equifax Info. Servs., LLC*, No. 14-15, 2014 U.S. Dist. LEXIS 25877, at *11 (M.D. Pa. Feb. 28, 2014) ("[T]he local interest factor weighs in favor of transfer to the Northern District of Georgia because . . . most of the conduct giving rise to [the plaintiff's] claim occurred in that district."). Accordingly, the fourth factor favors transfer.

### e.     Public Policies of the Fora

The Court does not discern, and the parties do not assert, any differences in the applicable public policies regarding trademark infringement or unfair competition between New Jersey and California. Therefore, this factor is neutral.

### f.     Trial Judge's Familiarity with Applicable State Laws

Snack argues two of its claims are based on New Jersey common law, with which New Jersey judges would have better familiarity. (ECF No. 34 at 20.) The Court finds Snack's argument irrelevant.

"The focus of this factor is whether judges in one of the districts would have greater familiarity with the applicable state law, particularly in diversity cases." *Rosen*, 2018 U.S. Dist. LEXIS 181005, at *26 (citing *Jumara*, 55 F.3d at 879). Here, a judge's familiarity with the applicable state laws is irrelevant, because Snack's state law claims need no separate analysis on the merits. "[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law."

*J&J Snack Foods Corp. v. The Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); *see also Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) ("[T]he elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law." (citations omitted)). "As a result, the [c]ourt need not conduct any separate inquiry into the state and/or common law requirements, and the [c]ourt's Lanham Act analysis extends . . . the analog state and common law claims." *Smart Vent Prods. v. Crawl Space Door Sys.*, Civ. A. No. 13-5691, 2016 U.S. Dist. LEXIS 108052, at *18 n.10 (D.N.J. Aug. 15, 2016) (citing *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 193 F. Supp. 3d 395, 424 n.43 (D.N.J. 2016)); *see also Smith v. Ames Dep't Stores*, 988 F. Supp. 827, 833 n.5 (D.N.J. 1997) ("Analysis under New Jersey common law for trademark infringement is the same as under Section 43(a) of the Lanham Act. Hence, violation of the act leads to a finding of common law infringement." (citing *FM 103.1 v. Universal Broad. of New York*, 929 F. Supp. 187 (D.N.J. 1996))); *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1140–41 (D.N.J. 1993) ("It is well established that the test for a common law unfair competition claim under New Jersey law is essentially the same as under the federal Lanham Act. Accordingly, a separate analysis of plaintiff's common law claims is not required." (citations omitted)). Therefore, the sixth factor is neutral.

Accordingly, among the six public interest factors, the fourth factor favors transfer and the other five factors are neutral, which means the public interest factors favor transfer. Because the private interest factors also favor transfer, Defendants' Motion to Transfer Venue pursuant to 28 U.S.C § 1404(a) is **GRANTED**.

The Court need not determine whether it has personal jurisdiction over Li in reaching this decision. *Harris v. City of Wilmington*, Civ. A. No. 10-1899, 2011 U.S. Dist. LEXIS 2135, at *15

(D.N.J. Jan. 7, 2011) ("[T]ransfer under Section 1404(a) or 1406(a) is permitted despite lack of personal jurisdiction over defendants." (citing *Lomanno*, 285 F. Supp. 2d at 640)); *Allegheny Techs., Inc. v. Strecker*, Civ. A. No. 06-666, 2007 U.S. Dist. LEXIS 98674, at *16 (E.D. Pa. Feb. 12, 2007) ("The Third Circuit has held that § 1404(a) is an appropriate authority for discretionary transfer where venue is proper, even if the forum [c]ourt lacks personal jurisdiction." (citing *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964))). "To the extent that there are any doubts about whether the Court lacks personal jurisdiction" over Li, "transfer under § 1404(a) fairly resolves the issue and avoids needless and costly expenditures on what is, after all, a non-merits issue." *Baby Merlin Co. v. Cribculture, LLC*, Civ. A. 18-3288, 2018 U.S. Dist. LEXIS 241241, at *6 n.1 (E.D. Pa. Dec. 17, 2018).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for improper venue is **DENIED**, Defendants' Motion to Transfer Venue is **GRANTED**, and Defendants' Motion to Dismiss for lack of personal jurisdiction and Snack's Motion for Preliminary Injunction are **DENIED as moot**. An appropriate order follows.

Date: **September 8, 2021**
                                                    */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**